# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **SHERMAN WRIGHT, on behalf of himself and others similarly situated,** | **)**<br>**)**<br>**)** | Case No.1:19-cv-761 |
| Plaintiff, | **)**<br>**)**<br>**)** | Judge Michael R. Barrett<br>Magistrate Judge Stephanie K. Bowman |
| vs. | **)**<br>**)** | |
| **THE KROGER CO.,** | **)**<br>**)** | |
| Defendant. | **)**<br>**)**<br>**)** | **JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

Representative Plaintiff Sherman Wright, on behalf of himself and others similarly situated

(the "Class Members"), and Defendant The Kroger Co., (collectively, the "Parties") hereby

respectfully request that this Honorable Court:

1. Preliminarily approve the Parties' Class Action Settlement Agreement (the "Settlement Agreement"), attached hereto as **Exhibit 1**;

2. Preliminarily approve the proposed class defined as:

    All present and former non-exempt employees of The Kroger Co. and/or Kroger Limited Partnership I ("Kroger" or "Defendant") who worked at Kroger's Cincinnati Fresh Center in Blue Ash, Ohio from September 11, 2016 through March 2, 2020.

3. Approve the Notice of Class Action Settlement (the "Notice") to the Class Members, attached hereto as **Exhibit 2**, pursuant to Fed. R. Civ. P. 23(e);

4. Designate Christopher J. Lalak and Hans A. Nilges of Nilges Draher LLC as Class Counsel, and preliminarily approve their request for attorneys' fees costs;

5. Preliminarily approve Representative Plaintiff's request for a service payment; and

6. Schedule a fairness hearing at which the Court will consider a request for final approval of the proposed settlement as well as an entry of final judgment.

In support of this Motion, the Parties submit the attached Memorandum in Support and the

following documents and proposed orders:

**Exhibit 1**: Class Action Settlement Agreement with Exhibits (the "Settlement Agreement");

**Exhibit 2**: Notice of Class Action Settlement (the "Proposed Notice");

**Exhibit 3**: Declaration of Christopher J. Lalak ("Lalak Decl."); and

**Exhibit 4**: Proposed Order Preliminarily Approving the Class Action Settlement (the "Proposed Order").

Respectfully submitted,

<table>
<tr><td><strong>NILGES DRAHER LLC</strong></td><td><strong>JACKSON LEWIS P.C.</strong></td></tr>
<tr><td><em>/s/ Christopher J. Lalak</em></td><td><em>/s/ Jamie M. Goetz-Anderson</em></td></tr>
<tr><td>Christopher J. Lalak (0090079)<br>614 W. Superior Avenue, Suite 1148<br>Cleveland, Ohio 44113<br>Telephone: (216) 230-2955<br>clalak@ohlaborlaw.com</td><td>Jamie M. Goetz- Anderson (0083562)<br>Emily J. Gelhaus (0076454)<br>Jackson Lewis P.C.<br>201 E. Fifth Street, 26th Floor<br>Cincinnati, OH 45202<br>Telephone:   (513) 898-0050<br>jamie.goetz-anderson@jacksonlewis.com<br>emily.gelhaus@jacksonlewis.com</td></tr>
<tr><td>Hans A. Nilges (0076017)<br>7266 Portage Street, NW, Suite D<br>Massillon, Ohio 44646<br>Telephone: (330) 470-4428<br>Fax: (330) 754-1430<br>hans@ohlaborlaw.com</td><td><em>Counsel for Defendant</em></td></tr>
<tr><td><em>Counsel for Plaintiff</em></td><td></td></tr>
</table>

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2020, the foregoing was filed electronically with the Court. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Christopher J. Lalak*
Christopher J. Lalak

*One of the Attorneys for Plaintiff*

<u>**MEMORANDUM IN SUPPORT**</u>

I.      <u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

      A.      <u>**The Action**</u>

On September 10, 2019, Representative Plaintiff filed his Class and Collective Action Complaint on behalf of himself and others similarly situated.  In his Complaint, Representative Plaintiff alleged that Defendant violated the Fair Labor Standards Act and the Ohio Minimum Fair Wage Standards Act by allegedly failing to pay Representative Plaintiff and the Class Members for all hours worked, resulting in unpaid overtime. (ECF No. 1).  Specifically, Plaintiff alleged that Defendant failed to pay its hourly employees for time spent at the beginning and end of each shift for certain tasks such as donning and doffing protective freezer suits, time spent obtaining and booting up electronic equipment used in the course of work, walking to an available powered industrial truck and performing an OSHA-required pre-trip inspection, and for time at the end of each shift returning any such equipment.  (*Id.*).   On October 11, 2019, Kroger filed its Answer to the complaint, denying that it had failed to compensate its employees for all hours worked, denying all alleged violations of law, and asserting affirmative defenses to same.  (ECF No. 8).

      B.      <u>**Negotiation of the Settlement.**</u>

In December 2019, the Parties conferred regarding Plaintiff's claims and Kroger's defenses to same.    (Lalak Decl. at ¶ 10).  As a result of these discussions, in January 2020, the Parties agreed to schedule a mediation to explore the possibility of resolving the case. (*Id.*).  In furtherance of mediation, Defendant produced payroll information and dates of employment data for its current and former non-exempt employees of Kroger's Cincinnati Fresh Center in Blue Ash, Ohio who were employed from September 11, 2016 through March 2, 2020 (the "Covered Period").  (*Id.* at ¶ 11). This information encompassed data concerning the payroll history of 1,552 current and former non-exempt employees. (the "Class Members"). (*Id.*).

Upon receiving this information, Plaintiff's Counsel, in conjunction with an economist Plaintiff's Counsel engaged as a consultant, computed the Plaintiff's and the Class Members' alleged damages.  (*Id.* at ¶ 12).  In addition to calculating the potential damages, Plaintiff's Counsel performed an expected valuation analysis of such damages, determining a fair settlement value in light of the uncertainties inherent to litigation.  (*Id.* at ¶ 13).  The Parties successfully mediated this case on March 13, 2020 with highly regarded mediator David P. Kamp. (*Id.* at 14).

### C.    The Settlement Terms.

The Agreement resolves the claims alleged in the Lawsuit of the Representative Plaintiff's and the Class Members who do not opt-out of the Settlement.  The proposed Rule 23 Class is defined as:

> All present and former non-exempt employees of The Kroger Co. and/or Kroger Limited Partnership I (collectively, "Kroger" or "Defendant") who worked at Kroger's Cincinnati Fresh Center in Blue Ash, Ohio from September 11, 2016 through March 2, 2020.

This definition encompasses the 1,552 Class Members[1] for whom data was produced in advance of mediation, including Representative Plaintiff.

The settlement terms provide for Defendant to establish a Global Settlement Fund in the amount of $250,000.00 for the benefit of the Class Members, to be distributed as follows:

- To Claimants (who are the Class Members who do not opt out of the Settlement), shares of the Net Settlement Fund pursuant to an agreed upon allocation formula reflecting the amount of alleged unpaid overtime each Claimant has in the Covered Period, in consideration for Claimant's release of all wage and hour claims arising under the FLSA and corresponding state law;

- To Plaintiff, a service payment of $5,000.00 to compensate him for his time and participation in representing the Class Members in bringing the claims, participating in the investigation and discovery process, and participating in the mediation process, and in consideration for his execution of a full release of claims against Defendant;

---

[1] The List of Class Members is set forth as **Exhibit A** to the Settlement Agreement.

- To Plaintiff's Counsel, one-third of the Global Settlement Fund for attorneys' fees, including those in connection with securing this Settlement, the claims process, and implementing this Settlement Agreement; and an additional amount for reimbursement of their reasonable costs and litigation expenses incurred.

(See Settlement Agreement).

The settlement terms also provide for Defendant to pay for the costs of the administration of the settlement fund, up to an amount of $15,000.00. (*Id.*). Any administration costs exceeding $15,000 would be paid from the Global Settlement Fund. (*Id.*).

## II.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

The proposed class action settlement is subject to preliminary and final approval by the Court pursuant to Fed. R. Civ. P. 23(e). As shown below, the Court's preliminary approval is warranted.

### A.   Preliminary Approval of the Settlement Under Rule 23(b) Is Warranted.

#### 1.   Certification of the Class Is Appropriate.

A proposed class action settlement must satisfy the requirements of Rule 23. *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997)). This proposed class action settlement satisfies those requirements.

The proposed class meets Rule 23's requirements of numerosity, commonality, typicality, and adequacy of representation. *See Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870 (1976); *UAW v. General Motors Corp.,* 497 F.3d at 626. In this case, the Class consists of 1,552 members, including representative Plaintiff. Accordingly, it is "so numerous that joinder of all members is impracticable."

Common issues of law or fact are presented by the Class's claims under the OMFWSA, including whether Defendant failed to pay the Class Members for off-the-clock work, and whether that failure resulted in unpaid overtime.

3

Representative Plaintiff is an adequate representative of the Class, in that he has common interests with other Class Members and he has vigorously prosecuted the interests of the Class through qualified counsel.  *Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998).

The Class further satisfies Rule 23(b)(3)'s requirements of predominance and superiority. *Senter*, 532 F.2d at 522; *UAW v. General Motors Corp.,* 497 F.3d at 626.  The issue raised in the Lawsuit predominate over any individual questions.  And, classwide resolution of this controversy is superior to the alternative of litigating 1,552 individual suits.  *General Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982) (class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"); *Day v. NLO*, 851 F. Supp. 869, 883 (S.D. Ohio 1994) (of equal importance "are considerations of the avoidance of the inequality resulting from piecemeal litigation as well as a concern to provide access to the courts for litigants with limited resources and common claims").

### 2.     The Notice Satisfies Rule 23 and Due Process.

Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement.  *Bailey v. White*, 320 Fed. Appx. 364, 2009 WL 928595 (6th Cir. 2009).  The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).

Reasonable notice to class members is required by due process.  *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Employees Pension Fund,* 429 F.3d 935, 943-44 (10th Cir.2005) (citing *Mullane,* 339 U.S. at 313; *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974).  Due process "does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action."  *Fidel v. Farley*, 534 F.3d 508 (6th Cir.

2008) (emphasis by the court) (citing *DeJulius,* 429 F.3d at 944 (citing *Mullane,* 339 U.S. at 313-14);

*In re Integra Realty Res., Inc.,* 262 F.3d 1089, 1110-11 (10th Cir. 2001); *Silber v. Mabon,* 18 F.3d

1449, 1453-54 (9th Cir.1994))). The issue is not whether all class members received notice, "but

whether the class as a whole had notice adequate to flush out whatever objections might reasonably

be raised to the settlement." *Fidel*, 534 F.3d at 514 (quoting *Torrisi v. Tucson Elec. Power Co.,* 8

F.3d 1370, 1375 (9th Cir.1993)).

The "individual notice" requirement of Rule 23 and due process is fulfilled by sending written

notice to class members by first-class mail at the addresses shown in the defendant's business records.

*Grunin v. International House of Pancakes* (8th Cir. 1975), 513 F.2d 114, 120, *cert. denied* (1975),

423 U.S. 864 (1975) (citing *Eisen*, 417 U.S. at 172-77). The Eighth Circuit noted that, in *Eisen*, "the

Supreme Court specifically held that individualized notice by mail to the last known address was the

'best notice practicable' in a class action." *Grunin*, 513 F.2d at 121.

The Proposed Notice satisfies these requirements. Under the terms of the Agreement and the

proposed Preliminary Order, the Notices will be sent to the Class Members by first-class mail using

the addresses shown in Defendant's records.

## B. Approval of the Settlement Under Rule 23(e) Is Warranted.

Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate" under a seven-

factor standard discussed below. *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (citing *Granada*

*Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909,

922-23 (6th Cir.1983)). The Sixth Circuit has recognized that "the law generally favors and

encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir.

1981). Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and

lengthy litigation, and lend themselves readily to compromise. 4 Newberg On Class Actions § 11.41

(4th ed. 2007) (citing cases). Therefore, when considering the below factors, the courts apply a

"strong presumption" in favor of finding a settlement to be fair.  *Dail v. George A. Arab, Inc.,* 391 F. Supp. 2d 1142, 1145-46 (M.D. Fla. 2005) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).  *Accord, Sweet v. General Tire & Rubber Co.*, 1982 WL 278, \*5 (N.D. Ohio Mar. 17, 1982).

### 1.      The Seven-Factor Standard Is Satisfied.

The Sixth Circuit uses seven factors to evaluate class action settlements:

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at \*3.  As shown below and in the Lalak Declaration (*see* **Exhibit 3**), the seven-factor standard supports approval of the Settlement.

### a)      No Indicia of Fraud or Collusion Exists.

Before mediation, counsel for Plaintiff engaged the services of an economist to independently calculate the alleged damages for representative Plaintiff and the Class Members.  (Lalak Decl. at ¶ 12).  Also in advance of mediation, counsel for Plaintiff conducted a detailed mathematical expected value of the case through trial.  (*See* Lalak Decl. at ¶¶ 24-25).  Specifically, Plaintiff's counsel assigned subjective probability values to each stage of the litigation (e.g., conditional certification, Rule 23 class certification, decertification, summary judgment, trial, establishing willfulness, establishing entitlement to liquidated damages in various amounts etc.).   Each of these risk probabilities were then compounded and multiplied by the damages calculated by Plaintiff's counsel's damages consultant, who is a Ph. D level economist. By utilizing this process, Plaintiff's counsel believes they were able to more fully appreciate the complete risk picture, and economic value of the case, rather than simply relying on intuition and experience.  Plaintiff's expected value analysis reveals that the settlement was favorable to Plaintiff and the Class Members.  Plaintiff's

6

counsel believes that this fact confirms their experiential opinion that the proposed settlement is fair, adequate, and reasonable.  (Lalak Decl. at ¶ 25).

The Agreement here was obtained only after extensive investigation and analysis, and after an arms-length settlement discussion that was facilitated by a well-known mediator. Thus, there is no indicia of fraud or collusion.

**b)**      ***The Complexity, Expense, and Likely Duration
of Continued Litigation Favor Approval.***

The policy favoring the settlement of class actions and other complex cases applies with particular force here.  Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming.  The Parties continue to disagree over the merits of Plaintiff's claims. Defendant maintains that, if litigation were to continue through judgment on the merits, Plaintiff's Claim would be dismissed.  Moreover, Defendant asserts that even if Plaintiff's Claim were not dismissed, the amount of any recovery for Representative Plaintiff and the Class Members would be minimal.  Finally, Defendant disputes whether the full three-year lookback period or a reduced two-year period for damages should apply and maintains that the Class Members are not entitled to liquidated damages.

If forced to litigate this case further, it is clear that the Parties would engage in complex, costly, and protracted wrangling.  The Agreement, on the other hand, provides substantial relief to Representative Plaintiff and the Class Members who do not opt-out of the Class promptly and efficiently.  The Agreement amplifies the benefits of that relief through the economies of class resolution.

**c)**      ***Investigation Was Sufficient
to Allow the Parties to Act Intelligently***

The Parties engaged in substantial investigation and analysis prior to negotiating the settlement.  Specifically, Defendant produced all relevant payroll data for the Representative Plaintiff

7

and the Class Members for the relevant time period. Representative Plaintiff's Counsel hired a consultant to evaluate that data and calculate the alleged unpaid overtime. And, as set forth above, Counsel for Plaintiff engaged in a detailed compound risk analysis prior to settlement negotiations. Thus, the Parties were fully informed and in position to act intelligently.

### d) The Risks of Litigation Favor Approval.

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raises affirmative defenses to Plaintiff's claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all.

### e) Uncertainty of Recovery Supports Approval.

The Class Member's recovery depends on many variables. Defendant maintains that if this case were to be litigated to a final decision on the merits, Plaintiff's claim would be dismissed, as Defendant asserts that all employees were properly paid for all time worked. Thus, the first variable is whether Plaintiff's claim would prevail on the merits. Even if Plaintiff's claim prevailed on the merits, the amount of time that Plaintiff could establish the class members worked off the clock remains uncertain. It is also uncertain whether liquidated damages would be awarded, and whether a two-year or three-year look back period applies here. As each of these variables would factor into a final determination, the uncertainty of recovery for Plaintiff and the Class Members favors settlement.

Accordingly, the uncertainty of recovery supports approval here, especially since the recovery is the maximum amount that the Representative and the Class Members that do not opt-out of the Class could recover at trial.

*f)*  ***Experienced Counsel's Views Favor Approval.***

The Parties' Counsel are experienced in wage-and-hour class actions, have acted in good faith, and have represented their clients' best interests in reaching the Agreement.  The Parties' Counsel support the Agreement as fair and reasonable, and in the best interest of the Class as a whole, as described in the Lalak Declaration.

## 2.     The Settlement Distributions Are Fair, Reasonable and Adequate.

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999).

### *a)*  ***The Individual Payments Are Reasonable and Adequate.***

The settlement shares for the Class Members will be calculated based upon the number of weeks that Class Member worked for Defendant in comparison to the total number of workweeks worked by all members during the three years prior to the filing of the Complaint.  (*See* Settlement Agreement at ¶ 45).  As mentioned above, as part of their pre-mediation evaluation, Plaintiff's counsel calculated the mathematical expected value of this case through trial, taking into account the compound risk associated with each stage of litigation. By utilizing this process, Plaintiff's counsel believes they were able to more fully appreciate the complete risk picture, and economic value of the case, rather than simply relying on intuition and experience. The settlement that was reached exceeded the pre-mediation expected value. Plaintiff's counsel believes that this fact confirms their experiential opinion that the proposed settlement is fair, adequate, and reasonable.

9

### b)      *Representative Plaintiff's Service Award Is Proper and Reasonable.*

Service awards to a Representative Plaintiff recognizing the value of his or her services on

behalf of other participants are proper.  As stated in *In re Dunn & Bradstreet Credit Services*

*Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to
> representative plaintiffs who have been able to effect substantial relief for
> classes they represent.

130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil*

*Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666

F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named

plaintiffs expend more time and effort beyond that of other class members in assisting class counsel

with litigation, such as by actively reviewing case and advising counsel in prosecution of case."  *In*

*re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).  The courts

recognize that "differentiation among class representatives based upon the role each played may be

proper in given circumstances."  *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson*

*Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)).  *See also Enterprise Energy Corp.*

*v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors

warranting incentive awards are the "time and effort spent" by the individuals in question and

"whether these actions resulted in a substantial benefit to Class Members").

Here, the Representative Plaintiff expended time and effort beyond that of the other class

members by identifying the claims, committing to prosecute claims on behalf of those similarly

situated to him, and was actively engaged in reviewing the case and advising class counsel in

prosecution of the case and in settlement discussions. Accordingly, the requested service payment of $5,000.00 is justified here.

### c) The Attorneys Fees and Expenses to Class Counsel Are Proper and Reasonable.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). The OMFWSA, which is interpreted in accordance with the FLSA, also provides that the defendant is liable for "costs and reasonable attorney's fees." O.R.C. § 4111.10. *See Douglas v. Argo-Tech Corp.*, 113 F.3d 67, at fn 2 (6th Cir. 1997); *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725, 732 (S.D. Ohio 2006).

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).

The percentage award agreed upon in the present case satisfies the Sixth Circuit's standard for common fund settlements. While the district court has the discretion to base attorneys' fees on the lodestar method, "the trend in the Sixth Circuit is toward adoption of a percentage of the fund method in common fund cases." *In re Southeastern Milk Antitrust Litig.*, 2013 U.S. Dist. LEXIS 70167, at * 13 (E.D. Tenn. 2013); *In re Telectronics Pacing Sys., Inc.*, 186 F.R.D. 459, 483 (S.D. Ohio 1999). The district court "must make sure that [class] counsel is fairly compensated for the

11

amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved." *Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). The percentage approach "provides a fair and equitable means of determining attorney's fees'" because "'the size of a common fund is an objective yardstick by which the benefit conferred upon the class can be measured.'" *In re Revco Securities Litigation*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993).

A one-third fee request has been approved in numerous similar class actions and collective actions. *See Green, et al. v. H.A.D., Inc.*, Southern District of Ohio, Case No. 2:15-cv-933 (1/3 fee approved in case where parties agreed to early mediation without motion practice and formal discovery); *Braucher, et al. v. Atlas Railroad Construction, LLC.*, Northern District of Ohio Case No. 5:14-cv-01601 (same); *Mulloy, et al. v. Cuyahoga County*, Northern District of Ohio, Case No. 1:14-cv-02546 (same); *see, also., Terry v. All Hearts Home Health Care,* Northern District of Ohio Case No. 1:16-cv-515; *Houston, et. al. v. Progressive Casualty Insurance Co.,* Northern District of Ohio Case No. 1:15-cv-01853; *Rucker v. Quality Blow Molding,* Northern District of Ohio Case No. 1:15-cv-1039; *Douglas, et al. v. J&K Subway, Inc.,* Northern District of Ohio Case No. 4:14-cv-2621; *Smith v. CMHA*, Northern District of Ohio Case No. 1:14-cv-1409; *Armbruster v. City of Cleveland*, Northern District of Ohio Case No. 1:13-cv-2626; *Williams v. Beckett Air, Inc.*, Northern District of Ohio Case No. 1:12-cv-2796; *Welch v. Incept Corporation*, Northern District of Ohio Case No. 5:12-cv-1775; *Malaj v. Gohlke*, Northern District of Ohio Case No. 1:11-cv-1578; *Campbell v. Judson Services*, Northern District of Ohio, Case No. 1:11-cv-906; *Murphy v. 1-800-Flowers*, Northern District of Ohio, Case No. 1:10-cv-1822; *Miller v. National Enterprise Systems*, Northern District of Ohio, Case No. 1:10-cv-1664; *Osolin v. Turocy & Watson LLP, et al,* Northern District of Ohio, Case No. 1:09-cv-2935; *Kelly v. National Enterprise Systems*, Northern District of Ohio, Case No. 1:09-cv-2268; *McNelley v. Aldi,* Northern District of Ohio, Case No. 1:09-cv-1868; *Rotuna v. West*

*Customer Management Group,* Northern District of Ohio, Case No. 4:09-cv-1608; *Jackson v. Papa John's*, Northern District of Ohio, Case No. 1:08-cv-2791; *Dillworth v. Case Farms*, Northern District of Ohio, Case No. 5:08-cv-1694; *Fincham v. Nestlé Prepared Foods Company*, Northern District of Ohio, Case No. 1:08-cv-73; and *McGhee v. Allied Waste Industries*, Northern District of Ohio, Case No. 1:07-cv-1110.

Plaintiff's counsel asserts that the requested attorneys' fees and costs are reasonable in light of the fact that the Settlement was obtained after extensive investigation and analysis, and after an arms-length settlement discussion facilitated by a well-known mediator. Defendant does not contest Plaintiff's counsel's request for attorneys' fees and costs in the amounts provided by the Settlement Agreement. Moreover, the efficient resolution of this case, without the necessity for prolonged litigation, was a direct result of Plaintiff's counsel's experience in handling complex litigation and extensive knowledge of wage and hour law. (*See* Lalak Decl. ¶¶ 4-7, 20). In order to make this resolution possible, Plaintiff's counsel agreed to advance the expenses and costs of litigation, discovery, and mediation for the benefit of Plaintiff and the Class Members. It is appropriate that the Court approve the reimbursement of these necessary expenses and costs to Plaintiff's Counsel from the Global Settlement Fund pursuant to the terms of the Settlement Agreement.

On the basis of these factors, as well as all of the other factors discussed above, the Court should conclude that the Settlement is fair, reasonable, and adequate, and grant preliminary and later final approval under Rule 23(e).

III.     **CONCLUSION**

Representative Plaintiff and Defendant request that the Court grant preliminary approval of the Settlement, designate Representative Plaintiff as the Class Representative for the Class Members, preliminarily approve Representative Plaintiff's request for a service award, designate Christopher J. Lalak and Hans A. Nilges of Nilges Draher LLC as Class Counsel, preliminarily approve

13

Representative Plaintiff's Counsel's request for attorneys' fees and costs, and direct distribution of

the Notice by entering the Proposed Order.

 

 

Respectfully submitted,

| **NILGES DRAHER LLC** | **JACKSON LEWIS P.C.** |
|---|---|
| */s/ Christopher J. Lalak* | */s/ Jamie M. Goetz-Anderson* |
| Christopher J. Lalak (0090079) | Jamie M. Goetz- Anderson (0083562) |
| 614 W. Superior Avenue, Suite 1148 | Emily J. Gelhaus (0076454) |
| Cleveland, Ohio 44113 | Jackson Lewis P.C. |
| Telephone: (216) 230-2955 | 201 E. Fifth Street, 26th Floor |
| clalak@ohlaborlaw.com | Cincinnati, OH 45202 |
| | Telephone:   (513) 898-0050 |
| Hans A. Nilges (0076017) | jamie.goetz-anderson@jacksonlewis.com |
| 7266 Portage Street, NW, Suite D | emily.gelhaus@jacksonlewis.com |
| Massillon, Ohio 44646 | |
| Telephone: (330) 470-4428 | *Counsel for Defendant* |
| Fax: (330) 754-1430 | |
| hans@ohlaborlaw.com | |
| | |
| *Counsel for Plaintiff* | |

4828-8879-6090, v. 1

14